UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 06-20675-CR-SEITZ

UNITED STATES OF AMERICA,

        Plaintiff,

vs.

EDRICK THOMAS,                 **REPORT AND RECOMMENDATION**

        Defendant.
_____/

On or about 2/27/07, court-appointed defense counsel Terence Lenamon ("Mr. Lenamon" and/or "counsel") timely submitted a voucher (No. FLS 06 1686) with appended time sheets requesting $19,329.20 for attorney's fees pursuant to the Criminal Justice Act ("fee request"). Mr. Lenamon ("counsel") represented Defendant Edrick Thomas ("Defendant" and/or "Thomas") for approximately 4&1/2 months, from his appointment on 10/6/06 to 2/22/07, through a 9-day jury trial and Defendant's acquittal. Since counsel's fees exceed the $7,000 statutory maximum, *18 U.S.C. §3006A(d)(2) (2000 & Supp. 2005)*, the voucher was referred to the undersigned for a Report and Recommendation as to the appropriateness of the fees requested. *28 U.S.C. Sec. 636(a); Local Magistrate Judge Rules.*

The CJA at *18 U.S.C. §3006A(d)(1)* provides that at the conclusion of CJA representation, an appointed attorney shall be compensated for time expended in court and for time "reasonably expended out of court" and shall be reimbursed "for expenses reasonably incurred." The district court, as the body empowered to "fix" CJA appointed counsel compensation, has the statutory authority and discretion to determine what is a reasonable expense or a reasonable use of billable time. *18 U.S.C. §3006A(d)(5); USA v. Griggs, 240 F.3d 974 (11th Cir. 2001).* If the recommended fee amount exceeds the statutory maximum, however, the district court must certify that the case involves "extended" or "complex" representation, and that the amount is necessary to provide counsel with fair

compensation. *18 U.S.C. §3006A(d)(3)*. If the legal or factual issues in a case are unusual, thus requiring the expenditure of more time, skill and effort by the lawyer than would normally be required in an average case, the case may be considered "complex." *Guidelines for the Administration of the Criminal Justice Act and Related Statutes, Vol. 7, Guide to Judiciary Policies and Procedures, Sec. A, Ch. 2, Part C §2.22B(3)*. If more time is reasonably required for total processing than the average case, including pre-trial and post-trial hearings, the case may be considered "extended." *Id.*

## DISCUSSION

### *Voucher Amount - Administrator's Review*

The Court's CJA administrator reviewed the voucher for compliance with CJA guidelines and mathematical accuracy prior to the undersigned's review. The administrator reviewed the $6,798.80 billed for 73.90 in-court hours @ $92/hour. After verifying the in-court time with the Court's minutes, the administrator made no changes to the in-court time billed.

The CJA administrator reviewed the $12,580.40 billed for 136.20 out-of-court hours as follows: 27.80 hours for "Interviews and conferences"; 66.70 hours for "Obtaining and reviewing records"; 34 hours for "Legal research and brief writing"; and 7.70 hours for "Travel time." The administrator adjusted the out-of-court compensation claimed downward to $12,190 redacting some duplicative time listed and time for some personal-type work performed. As a result, the time for "Interviews and conferences" was modified to 27.30 hours; "Obtaining and reviewing records" to 66.30 hours; and "Legal research and brief writing" to 31.20 hours.

No expenses were claimed. The grand total claimed, as adjusted, is now **$18,988.80.**

### *Undersigned's Review and Recommendation*

In making this recommendation, the undersigned reviewed the entire voucher, the time sheets submitted, and case record as it relates to counsel's representation of Defendant Thomas. This Court

also considered counsel's 6/6/07 letter and 7/9/07 supplementary letter submitted in support of his fee request, as requested.

As a matter of background, on October 5, 2006, Defendant, whom counsel described as a school teacher from Clewiston, Florida, was arrested along with three co-defendants, and ultimately indicted for conspiracy to possess, and attempted possession, of 5 or more kilograms of cocaine; conspiracy, and attempt, to commit Hobbs Act robbery; conspiracy to possess, and possession of, firearms in furtherance of a crime of violence or drug trafficking offense. Based upon these charges, Defendant was facing significant jail time if convicted.

The case arose from a government sting operation conducted by HIDTA which employed an ATF undercover agent posing as a drug dealer from a Colombian drug organization. The agent reportedly pretended to be a disgruntled employee looking to recruit some individuals to help him rip off his drug dealer employer in a home invasion robbery scheme. ATF reportedly used a confidential informant to help seek out individuals from the community interested in doing the robbery. As counsel explained, beginning in late August through October 2006, the ATF agent and confidential informant held in excess of 30 meetings with Defendant's co-defendants, most of which were audio and/or video taped. During the meetings the co-defendants reportedly discussed committing the home invasion robbery while the agent pretended to be an unknown victim. After the co-defendants would be directed to the stash house, they all agreed to duct tape the parties found in the home and rob in excess of 10 or more kilograms of cocaine using firearms. During the conversations, the co-defendant(s) spoke of using Defendant Thomas to assist in the robbery and home invasion scheme.

On 10/5/06, defendant Thomas drove from Clewiston, Florida (approximately 70 miles northwest of Miami), to meet with the three co-defendants. All four defendants then drove in two vehicles, including Thomas' truck, to a mall and met with the ATF agent and informant. They then

drove to a warehouse to pick up a van to use in the home invasion robbery. It was at the warehouse that police arrested the defendants, including Thomas. Counsel explained that Thomas was taken to ATF offices where he allegedly made incriminating statement(s) implicating himself in the robbery conspiracy. None of the statements were recorded.

Defendant appeared before the Court for his initial appearance on 10/06/06, at which counsel Terence Lenamon, a Miami practitioner, was appointed as his permanent counsel of record. The Court subsequently found Thomas to be a danger to the community, based upon the charges and incriminating statement(s), and ordered him to be pretrial detained.

As counsel explained, however, Defendant maintained that he came to Miami to pick up money owed to him by one of the co-defendants and that he was dressed in hunting fatigues with a weapon in his car because he had just been hog hunting in the fields of Clewiston. Defendant claimed that he was used by one of the co-defendants to convince the agent the he had the manpower, and apparently the proper gear, to conduct the robbery. After several continuances, the case went to trial on 2/5/07. The trial lasted nine days, plus three days for jury deliberations.

To prepare for trial, counsel explained, *inter alia*, that he had to spend extensive time reviewing the 30-plus video and audio recordings and transcripts produced by the government. He also spent time comparing the tapes to the transcripts, having to do so several times for accuracy. Counsel further explained that he traveled to Clewiston, Ft. Lauderdale and Pompano to locate and interview defense witnesses. Counsel met with numerous family members and friends who could help establish a timeline for Defendant's activities, including individuals who accompanied Defendant hog hunting prior to his departure to Miami the day of the proposed robbery. This explains the numerous interviews and conferences listed on the time sheets with Defendant's family members, including, his mother, ex-wife (also listed on the time sheets as "wife" and "Latesha Thomas"), girlfriend, and cousin identified on the time sheets as "Antoine Robinson," and friend Dwayne Hughes. Several of these

individuals testified at trial.

Counsel's trial preparation also included several motions, examinations for each of the government's six witnesses and two co-defendants who implicated the defendant. Counsel explained that he also prepared the direct of the defendant, who claimed his actual innocence, and the direct for three defense witnesses. Counsel further explained that he prepared and introduced 50-plus exhibits at trial. Ultimately, one defendant entered a guilty plea, two co-defendants were found guilty after trial on several of the charges. On 2/22/07, however, the jury acquitted Defendant of all charges.

As the record reveals, this was an extensive and time-consuming case based on the number of defendants involved and the substantial number of audio and video taped recordings and transcripts and evidence produced, all of which had to be reviewed *[See Government's Response to Standing Order D.E.'s 26, 54, & 57]*. Exculpatory witnesses had to be located and interviewed and all trial preparation completed within just four months time. Counsel obviously zealously represented his client, as he was obliged to do, and obtained for him an excellent result. On or about 2/27/07, counsel timely submitted his fee request.

As for the voucher and the adjusted $12,190 claimed for out-of-court fees[1], I have reviewed each and every entry listed on the time sheets and the total time claimed for each of the task categories. The time sheets aptly set forth and describe the tasks performed, both by task category, and separately, chronologically. In light of the case background, the number of defendants and charges involved, the substantial amount of discovery produced and the work required to prepare this case for trial in just four months time, I am satisfied that counsel documented the actual time he spent on the case. I find the time billed to be justifiable, reasonable and fair. This Court also notes

---

[1] The undersigned defers to the Court Clerk to verify all in-court time and expense allowances.

that counsel did not bill for any of his costs and/or expenses. Based upon the same, I also consider this matter to be "extended," justifying compensation in excess of the $7,000 statutory maximum.

## CONCLUSION

In sum, based upon my review of the voucher, having personally reviewed the time sheets and the case record as it relates to counsel's voucher, I am **RECOMMENDING** that counsel be expeditiously paid the **$18, 988.80** adjusted claim ($6,798.80 in-court time + $12,190 out-of-court time), as fair compensation for his work on this case.

In accordance with 28 U.S.C. §636(b)(1)(c), the parties shall have ten (10) days from receipt of this Report and Recommendation in which to serve and file any written objections with the Honorable Patricia A. Seitz, United States District Judge.

Respectfully submitted this 17 day of July, 2007.

PETER R. PALERMO
SR. UNITED STATES MAGISTRATE JUDGE

cc:   District Judge Patricia A. Seitz
      Terence Lenamon, Esq.
      Lucy Lara, CJA administrator